# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re                                                   Chapter 7
**WILLIAM A. STELLA,**                    Case No. 10-11922-JNF  (Contested
     Debtor                                       Matter Nos. #27 and #37)

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**WARREN E. AGIN, CHAPTER 7 TRUSTEE**
    Plaintiff
v.
                                                              Adv. P. No. 10-1154
**WILLIAM A. STELLA,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

Two matters are before the Court:  1) the Partial Objection to Debtor's Claim of Homestead Exemption filed by Warren E. Agin, the Chapter 7 Trustee (the "Chapter 7 Trustee"), and the  Response to the Trustee's Partial Objection filed by William A. Stella (the "Debtor") (the "Contested Matter"); and 2) the Chapter 7 Trustee's Complaint against the Debtor pursuant to which the Chapter 7 Trustee seeks revocation of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3).  The Court consolidated the Contested Matter

1

and the adversary proceeding, both of which involve consideration of the terms of the

Stella Family Realty Trust (the "Trust"), which the Debtor established in 2001, and

conducted a trial on October 25, 2010.  At the trial, two witnesses testified and 27 exhibits

were introduced into evidence.

Prior to the trial, the parties filed a Joint Pretrial Statement in both the Contested

Matter and the adversary proceeding.  They agreed that with respect to the Contested

Matter there were no facts in dispute.  With respect to the Chapter 7 Trustee's Complaint,

they agreed that the following issues of fact were in dispute: 1) Whether the Debtor always

believed that he was the sole beneficiary of the Trust; 2) Whether the Debtor believed his

signature on, and delivery of, a 2010 Schedule of Beneficiaries of the Trust to the Chapter

7 Trustee was appropriate; and 3) Whether the Debtor justifiably relied on advice of

counsel in signing and delivering the 2010 Schedule of Beneficiaries of the Trust to the

Chapter 7 Trustee.

The Court now makes its findings of fact and conclusions of law in accordance with

Fed. R. Bankr. P. 7052.

**II. FACTS**

The Debtor filed a Chapter 7 petition on February 26, 2010.  The Debtor, who was

born on April 5, 1942, is divorced and the father of two adult sons:  William A. Stella, Jr.

and Andrew J. Stella.  Prior to 2007, the Debtor was the owner of Bill Stella Kitchens, Inc.

In 2007, he commenced doing business as a sole proprietorship known as BSK Designs.  Bill

Stella Kitchens, Inc., however, was reincorporated in 2008.  The Debtor's home address is

2

82 Dillingham Way, Hanover, MA 02339 (the "Property"). On August 13, 1987, the Debtor

purchased the Property, individually.  He financed the purchase with a mortgage on the

Property, which  was satisfied in 2006.

At all times, the Property has been the Debtor's principal and only residence.  When

the Debtor purchased his home, he had physical custody of his sons, and they lived with

him until they were emancipated.  In 2001, the Debtor engaged Thomas Carpenter Esq.

("Attorney Carpenter"), who was associated with the firm of Ardito, Sweeney, Stusse,

Robertson & Dupuy, P.C. at the time.  The Debtor knew Attorney Carpenter because he

had attended Boston College with his son, William A. Stella, Jr.  The Debtor asked Attorney

Carpenter if he could draft some sort of document which would provide that his sons

would receive the Property when he died or became incapacitated. The Debtor wanted to

avoid the probate process, as he had heard that it was both expensive and complicated.

Attorney Carpenter and the Debtor discussed the Debtor's wish to protect the

Property from creditors for the benefit of his sons, while maintaining control over the

Property because it was his principal residence.  Attorney  Carpenter told the Debtor that

he could draft a trust which would satisfy that purpose. Attorney Carpenter stated:  "I

advised  him that I could draft a document for him that would give him complete control

of the house."  Attorney Carpenter prepared a deed from the Debtor to himself as Trustee

of the Trust, as well as the "Declaration of Trust Establishing Stella Family Realty Trust."

The Debtor executed both documents in Attorney Carpenter's Cape Cod office on

September 5, 2001.  Attorney Carpenter also prepared a Schedule of Beneficiaries of the

3

Trust, which the Debtor signed.  The Schedule of Beneficiaries listed the Debtor's two sons, each with a 50% beneficial interest in the Trust.  Both William A. Stella Jr. and Andrew J. Stella executed the 2001 Schedule of Beneficiaries which was then notarized.  The Declaration of Trust, but not the Schedule of Beneficiaries, was recorded in the Plymouth county Registry of Deeds.

At all times, the Debtor believed he was the actual owner of the Property.  At all times, the Debtor paid all expenses for the Property from his personal accounts.  At all times, the Debtor paid the mortgage from his personal accounts.  At all times, the utility bills were in the Debtor's name and he paid those bills from his personal accounts.  In addition, at all times, the Debtor, on his individual state and federal tax returns, deducted expenses for real estate taxes and mortgage interest, whether they were available as itemized deductions or  were applied to standard deductions.  The tax returns were prepared by the accounting firm of O'Brien, Riley & Ryan, P.C.  For example, on Schedule A-Itemized Deductions to his 2003 federal income tax return, the Debtor deducted $4,036 for real estate taxes and $9,025 for mortgage interest.  The Debtor claimed the same deductions in the following years.  In addition, he testified that his sons never contributed any monies toward the payment of expenses associated with the Property.

The Trust never applied for or received a Federal Identification Number (FID), and the Trust never filed its own or any other tax return.  The Trust never generated any income from rent or otherwise.

In 2006, the Debtor applied to Rockland Trust Company for a mortgage.  The

4

mortgagor was the Trust and the Debtor was identified as the Trustee.  The Debtor signed all of the loan documents for the mortgage.  The Debtor, however, always sent personal checks for the mortgage payments, and Rockland Trust Company always accepted those checks.  The 1099's issued by the bank were in the name of William Stella, Trustee, although the Debtor's social security number was set forth on the 1099.

The Town of Hanover issued tax bills after 2002 in the name of "Stella, William A TT, Stella Family Realty Trust."  Those bills were sent to the Debtor at his residence.  The Debtor paid those bills with his personal funds, and the town accepted those funds and cashed the checks.

In June of 2009, the Debtor called Attorney Carpenter for a meeting.  The Debtor told him that his business was not doing well as it was tied to the real estate market and that he had problems with his landlord and had signed a personal guaranty of the lease.  He also informed Attorney Carpenter that that he thought he might have to seek  bankruptcy protection.  Attorney Carpenter informed the Debtor that his house "could be in jeopardy."  Attorney Carpenter advised the Debtor to  deed the Property from the Trust to himself to obtain homestead protection for the Property.  The Debtor agreed to have Attorney Carpenter draft the necessary documents, and the Debtor signed them in Attorney Carpenter's office on July 2, 2009.  The deed from the Debtor, as Trustee of the Trust, to himself, individually,  provided in pertinent part the following:

> The undersigned being the Trustee of the Stella Family Realty Trust, under a declaration of trust dated September 5, 2001 and recorded on September 21, 2001 at the Plymouth County Registry of Deeds  . . ., hereby

certify in accordance with the terms of the Trust:

> 1. I am the sole Trustee and beneficiary of the Trust;
> 2. I, *as sole Trustee and beneficiary*, have authority to act with respect to the real property owned by the Trust; and
> 3. I, as Trustee, hereby certify that the existence or nonexistence of a fact which constitutes a condition precedent to acts by the Trustee or which are in any other manner germane to affairs of the Trust, shall be binding on all Trustees and the Trust estate in favor of a purchaser or other person relying in good faith on this certificate.

(emphasis supplied).  The deed was notarized by Attorney Carpenter.  The deed and declaration of homestead were recorded on the Debtor's behalf by Attorney Carpenter on July 9, 2009.

Attorney Carpenter testified that the reference to the Debtor's status as the sole beneficiary was a "typographical error" that he caused and for which he was responsible because he did not have a copy of the original, 2001 Schedule of Beneficiaries in his possession.  Neither he nor the Debtor testified that the Debtor instructed Attorney Carpenter to formally amend the Schedule of Beneficiaries to eliminate the Debtor's two sons as the sole beneficiaries of the Trust in July of 2009.

When the Debtor and Attorney Carpenter concluded their meeting, Attorney Carpenter advised the Debtor to consult a bankruptcy lawyer whom he knew because the Debtor had suggested he might have to file a bankruptcy petition.  At Attorney Carpenter's suggestion, the Debtor consulted an attorney on Cape Cod whom the parties identified as Attorney Johnson.  The Debtor met with Attorney Johnson for approximately 15-20 minutes at which time Attorney Johnson explained the bankruptcy process to the Debtor,

6

including what assets he might retain.  The Debtor, however, never discussed the Property

with Attorney Johnson and Attorney Johnson did not ask the Debtor anything about it,

except to inquire about whether the Debtor owned his own home, to which the Debtor

replied in the affirmative.

Sometime after the Debtor's meeting with Attorney Carpenter, in the fall of 2009, the

Debtor went to the Hingham Institution for Savings to inquire about getting a mortgage

to pay off the equity loan on the Property from the Rockland Trust Company.  The Debtor

obtained a mortgage and satisfied the mortgage to Rockland Trust Company.  The Debtor,

individually, was the mortgagor with respect to the new mortgage.  In December of 2009

or January of 2010, the Debtor ceased work, although his sons continued the kitchen design

business as a limited liability company.  In January of 2010, the Debtor contacted Attorney

Brian Donovan's office and requested a meeting to discuss filing a bankruptcy petition.

Attorney Donovan met with the Debtor for the first time on January 5, 2010.  At the

meeting, Attorney Donovan explained the bankruptcy process to the Debtor and asked him

about all of his property, including his real estate.  The Debtor explained to Attorney

Donovan that the Property had been in a trust from 2001 to 2009. Mr. Donovan asked the

Debtor to furnish him with a copy of the Trust.  The Debtor transmitted, by facsimile, a

copy of the Trust to Attorney Donovan on January 5, 2010 after he left Attorney Donovan's

office.

In a subsequent conversation with the Debtor on January 5, 2010, Attorney Donovan

asked the Debtor to provide him with a copy of the Schedule of Beneficiaries.  The Debtor

was unable to find a copy of the Schedule of Beneficiaries and explained that circumstance to Attorney Donovan. Attorney Donovan advised the Debtor to call the attorney who drafted the Trust and obtain a copy of the original from him.

On January 5, 2010, or the next day, the Debtor spoke with Attorney Carpenter about the Schedule of Beneficiaries. Attorney Carpenter told the Debtor that he could not locate the original, 2001 Schedule of Beneficiaries. Attorney Carpenter said "I think you are the original beneficiary. I'll draw it up, I'll fax it to you, and you'll have to sign it."

On January 6, 2010, the Debtor received an unsigned Schedule of Beneficiaries from Attorney Carpenter by facsimile at Stella Kitchens, his sons' place of business. The Debtor signed the 2010 Schedule of Beneficiaries and faxed a copy to Attorney Donovan. The document did not contain a header showing the imprint of Attorney Carpenter's fax machine, although it did show a fax imprint from Stella Kitchens where the Debtor was working. The 2010 Schedule of Beneficiaries identified the Debtor as the 100% beneficiary of the Trust, although the Debtor knew that the 2010 Schedule of Beneficiaries was not the original Schedule of Beneficiaries executed by his sons on September 5, 2001.

Attorney Carpenter testified that he looked at the Trust document quickly and "thought that there was no problem with drafting a new schedule. He explained: "[H]e had the right to amend the trust. He was the Trustee with complete control of the property. So I drafted him a new schedule and just, you know, sent it to him." Despite Attorney Carpenter's testimony that the Schedule was "new," it was undated and did not reflect that it was amended.

8

The Debtor did not advise Attorney Donovan that the 2010 Schedule of Beneficiaries had just been signed in January of 2010. He did not tell Attorney Donovan that the 2010 Schedule of Beneficiaries was not the original Schedule of Beneficiaries.

Attorney Donovan prepared a Chapter 7 petition for the Debtor's signature and, as noted above, the Debtor filed a Chapter 7 bankruptcy petition on February 26, 2012. On Schedule A-Real Property, he listed the Property with a value of $450,000. On Schedule C-Property Claimed as Exempt, he claimed a Massachusetts homestead, *see* Mass. Gen. Laws ch. 188, § 1.[1] On amended Schedule D-Creditors Holding Secured Claims, the Debtor listed Hingham Institution for Savings with a claim in the sum of $98,146.20 secured by a mortgage on the Property.

On March 11, 2010, Attorney Donovan mailed the Chapter 7 Trustee a copy of the Declaration of Trust, along with a copy of the 2010 Schedule of Beneficiaries. On April 6, 2010, the Debtor attended the section 341 meeting of creditors. On that date, the Debtor testified that he had owned the property from 1987, even though it had been in a Trust for part of that time. In response to the Chapter 7 Trustee's question about the Trust, the Debtor replied that he wanted to provide a mechanism whereby his sons would get the Property upon his death.

On May 11, 2010, the Chapter 7 Trustee sent a letter to Charles Ardito, Esq. of Ardito, Sweeney, Stusse, Robertson & Dupuy, P.C., requesting a copy of the original

---

[1] The Debtor's claimed homestead exemption is governed by the statute in effect prior to the repeal and recodification effective March 16, 2011.

Schedule of Beneficiaries for the Trust.  The firm obtained the original, 2001 Schedule of Beneficiaries and forwarded it to Attorney Carpenter.   On May 24, 2010, Attorney Carpenter transmitted the original Schedule of Beneficiaries to the Chapter 7 Trustee by facsimile.  Along with the 2001 Schedule of Beneficiaries, Attorney Carpenter also included a letter explaining the actions taken by the Debtor with regard to the Trust and the Schedule of Beneficiaries.

Since at least June of 2009, the Debtor thought he was the beneficiary of the Trust. The Debtor thought he was the sole beneficiary because he always had control of the property, and because in July of 2009 he signed a deed which Attorney Carpenter had prepared which stated that he was the sole beneficiary of the Trust, as well as the Trustee.

The Debtor always has consulted attorneys with respect to real estate matters.  The deed the Debtor signed in July of 2009 provided that he was the sole beneficiary of the Trust, as well as the Trustee, and he believed that to be the case at that time.  The Debtor has always considered the Property to be his property, not someone else's.

Attorney Carpenter testified that the Debtor did not instruct him as to the content of the documents he drafted.  According to Attorney Carpenter, he drafted the Trust with the intention of enabling the Debtor to replace the beneficiaries who had "zero authority in this trust.  No powers to do anything."

## III. THE STELLA FAMILY REALTY TRUST

The provisions of the Trust are critical to resolution of the issues before the Court. The Trust, which *is not* a nominee trust, provides in pertinent part the following:

THIS INSTRUMENT WITNESSES that [the Debtor] . . .  being about to take title to a certain parcel of land in Plymouth County, Massachusetts, do hereby declare that he will hold said parcel of land and any and all other property, real and personal which may be conveyed or transferred to him as Trustee hereunder, on and upon the following trusts:  . . .

## ARTICLE II - TERMS

The term "Trustee"herein used shall mean not only the above mentioned person but whoever may be Trustee for the time being. The term "Beneficiary" shall mean those designated as such in Article VII hereof.

## ARTICLE III - POWERS OF THE TRUSTEE

*The Trustee shall have the entire control and management of the trust property to the same extent as if he was the absolute owner free of trust.*  Without limiting the generality of the foregoing, the Trustee shall also have the following powers:

A. He shall have the power to purchase or otherwise acquire such real or personal property as he deems expedient and in the exercise of this power, may make investments and hold property; sell and exchange an interest in real or personal property held by him for cash or for any other consideration and upon such terms and conditions as he deems advisable; to borrow money and mortgage or pledge any part of the trust assets and to issue bonds, notes, or other evidences of indebtedness upon such terms and maturities as he thinks proper, to lend money with or without security; to execute as lessor or lessee leases for any term including terms expiring after the termination of the truste; and to pay all expenses or other charges and obligations incurred in the administration of the trust or the assets thereof . . . .

## ARTICLE IV -  RESIGNATION AND SUCCESSOR TRUSTEES

Any Trustee may resign his trust by an instrument in writing signed and acknowledged by him, delivered or sent by registered mail to the continuing trustee or trustee and recorded in the Registry of Deeds wherein this instrument is recorded and in the event there is no continuing trustee, to the beneficiaries if they are living . . . .

## ARTICLE V -  PROTECTION OF PERSONS DEALING WITH TRUST

***

C. A certificate signed by the Trustee as to any fact affecting the trust or the trust property or the administration thereof or as to any change of Trustee or as to any amendment of the trust instrument or the authority of any Trustee or other person to act for the Trustee or as to any other action by the Trustee of [sic] Beneficiaries may without further inquiry be treated as conclusive evidence thereof by persons dealing with the Trustee or any of the trust property.

## ARTICLE VI - PROTECTION OF TRUSTEE AND BENEFICIARIES

***

C. Subject to Paragraph E of this Article, the Trustee shall not be personally liable for any obligation or liability incurred by this trust or by the Trustee and the Trustee shall be entitled to reimbursement and exoneration out of the trust estate according to law.

D. The trust alone shall be liable for the payment or satisfaction of all obligations and liabilities incurred in carrying on the affairs of this trust.

E. The Trustee shall not be liable to this trust or to the Beneficiaries except for his own acts, neglects and defaults in bad faith.

## ARTICLE VII - BENEFICIARIES

The Beneficiaries of this trust are the persons listed as the Beneficiaries in the SCHEDULE OF BENEFICIARIES this day executed by the Beneficiaries and filed with the Trustee and his successors and assigns as herein provided for. *The beneficial interest of the Beneficiaries are as may now or hereafter be set forth on said SCHEDULE OF BENEFICIARIES which shall from time to time be amended to reflect any change in the identity of the Beneficiaries or in their respective interest hereunder.*

The said Beneficiaries shall be entitled to such distributions of income and/or capital as the Trustee shall from time to time in his discretion determine, and upon the termination of the trust shall be entitled to a distribution of the trust property in the method hereinafter set forth.

## ARTICLE VIII - TERMINATION

This trust shall terminate twenty (20) years after the death of the Trustee originally named herein but may be terminated sooner by an instrument in writing signed by the Trustee.  Upon termination of the trust, the Trustee shall apply the trust property first toward the payment and discharge of all debts, liabilities and obligations of the Trustee, direct or contingent, and shall distribute the balance of the trust property to and among the Beneficiaries then entitled to distribution in the shares proved in Article VII. . . .

***

ARTICLE X

This Declaration of Trust may be recorded in any Registry of Deeds in an district in which any property of the trust may be located, and if so recorded, any amendment thereof shall likewise be recorded therein.

(emphasis supplied).

## IV. POSITIONS OF THE PARTIES

A. <u>Partial Objection to Debtor's Claim of Exemption</u>

1. The Chapter 7 Trustee

The Chapter 7 Trustee asserts that the Debtor's equity in the Property is worth about $352,000.  He maintains that because the Debtor, who declared that equity exempt pursuant to 11 U.S.C. § 522(b)(3)(A) and Mass. Gen. Laws, ch. 188, § 1, acquired his interest in the Property less than 1,215 days before he filed his bankruptcy petition, his exemption is limited to $136,875, the statutory cap in effect at the commencement of the Debtor's case, pursuant to 11 U.S.C. § 522(p). He argues:

It is undisputed that Mr. Stella never respected the form of the trust and he continued to treat the house as his own individual personal property. This fact does not prevent section 522(p)(1) from limiting his exemption.

13

Notwithstanding his failure to respect the trust mechanism, he intentionally elected to place the house in the trust. He intentionally chose to represent to the outside world that the house was no longer his. He is bound by the effect of that decision and is bound by the trust's legal structure.

The Chapter 7 Trustee also argues:

The trust is what it purports to be. It is an irrevocable, non-amenable, grantor trust into which Mr. Stella placed his home for the benefit of his two sons. Prior to the transfer his sole interest in the house was his possessory interest and the bare legal title he held as trustee. As a result of the transfer, he became the owner of the house in fee simple. He acquired quantifiable legal and equitable value as a result of the transfer and, as a result, his exemption in the house is capped by 11 U.S.C. § 522(p)(1).

Addressing the Debtor's arguments that the Trust was, in effect, a nullity, the Chapter 7

Trustee contends that the Debtor cannot avoid the ramifications of the Trust because his

creditors might be able to do so. He states:

[T]hat remedy is not available to Mr. Stella. Massachusetts' state law recognizes that when someone creates a trust for their own benefit creditors can reach the trust assets. State Street Bank and Trust Co. v. Reiser, 7 Mass. App. Ct. 633, 636, 389 N.E.2d 768 (1979). It does not give the settlor the right to ignore the trust and claim the assets as his own; trust avoidance is a creditor remedy. Merchants Nat'l Bank v. Morrissey, 329 Mass. 601, 605, 109 N.E.2d 821 (1953); In re Tosi, 383 BR 1, 10-12 (Bankr. D. Mass. 2008); In re Landry, 226 BR 507 (Bankr. D. Mass. 1998).

The Chapter 7 Trustee concludes:

Even with broad powers, the trustee holds legal title, not an equitable interest. *See* In re Chew, 496 F.3d 11, 15-16 (1st Cir. 2007)(in dicta, stating that if creditors had a beneficial interest in the debtor's home under a constructive trust theory, the debtor would not be able to exempt that interest in the home because he would have only bare legal title). The trustee acts as a fiduciary for the beneficiaries. Fogelin v. Nordblom, 402 Mass. 218, 223, 521 N.E.2d 1007 (Mass. 1988). His actions remain constrained by those fiduciary obligations. Id. at 225-227; Rest. 3d Trusts § 70 (2007). Even very broad discretionary powers are always subject to control of a court of equity to

14

assure that in exercise of those powers the purposes of the trust are fulfilled. Mazzola v. Myers, 363 Mass. 625, 638, 296 N.E.2d 481, 490 (1973). The fact that the trust document gave Mr. Stella broad powers is not the same thing as saying he could do whatever he liked with the trust property. He was a trustee of the trust assets for the benefit of the beneficiaries and his actions were limited by the obligations state law places on trustees.

  2. The Debtor

The Debtor argues that because the Beneficiaries had no powers under the Trust and because he reserved to himself complete authority to exercise control over the assets of the Trust and was the settlor, he had the power to revoke the Schedule of Beneficiaries and make himself the sole Beneficiary. In view of the his ability to terminate the Trust, amend the Trust, change the Beneficiaries and apply all Trust property to the payment of his liabilities, the Debtor concludes that under Massachusetts law creditors would have the right to reach the Trust assets as if they were his own. Citing ITT Commercial Fin. Corp v. Stockdale, 25 Mass App. Ct. 986, 987 (1988) (extending the Massachusetts Appellate Court decision in State Street Bank and Trust Co., Inc. v. Reiser, 7 Mass. App. Ct. 633, 638 (1979), a case in which creditors of a settlor/beneficiary, who reserved the power to revoke, amend or direct the disposition of principal or income during his life, could reach trust assets), the Debtor concludes:

> [I]f the Trust had remained in full force and effect on February 26, 2010 and Stella had filed a Chapter 7 bankruptcy showing no interest in the property held by the Stella Family Realty Trust, the Chapter 7 Trustee, under the authority cited, would have a remedy to include these trust assets as property of the estate under § 541. "The controlling issue is whether the Trust and the Trust res are property of the Debtor's bankruptcy estate because the Debtor, as co-settlor and sole trustee of the Trust, retained broad power to alter and amend the Trust and retained the incidents of ownership of the

15

Trust res." <u>In re Jane A. Tougas</u>, 338 B.R. 164 (Mass. Bankr. 2006).

It is clear from the above analysis that the language of the Stella Family
Realty Trust would permit the Chapter 7 Trustee to file a complaint which
would include the trust property in the Debtor's Chapter 7 estate under §
541. In view of this conclusion, the Trustee cannot conversely argue,
therefore, that the Debtor's property interest only originated in July, 2009.

B. <u>The Complaint</u>

1. The Trustee

The Trustee recites that on January 5, 2010 the Debtor's attorney asked him to

provide a copy of the Schedule of Beneficiaries of the Trust.  When the Debtor was unable

to locate a copy of the Schedule, he contacted Attorney Carpenter to obtain a copy.

Attorney Carpenter then prepared a document showing the Debtor as the sole beneficiary

of the Trust and faxed the Debtor the document on January 6, 2010.   The same day, the

Debtor  signed the document, which was neither dated nor notarized, and faxed it to his

counsel.   The document did not contain a header showing the imprint of Attorney

Carpenter's fax machine, although it did show a fax imprint from Stella Kitchens where the

Debtor worked.  The Debtor did not inform his bankruptcy counsel that the 2010 Schedule

of Beneficiaries had just been signed or that it was not the original, 2001 Schedule of

Beneficiaries. On May 24, 2010, the Debtor's counsel provided the Schedule of Beneficiaries

to the Trustee.

The Trustee maintains that the Debtor knew that the Schedule provided to the

Trustee through his counsel was not the original and was a falsified document within the

meaning of 11 U.S.C. § 727(a)(3).  Indeed, the Trustee maintains that this Court could infer

16

that the Debtor intended to deceive him and his bankruptcy counsel about the Schedule

of Beneficiaries, adding that his reliance on the fact that Attorney Carpenter prepared the

Schedule is neither justification nor a defense when it should have be clear to the Debtor,

who, as a businessman, was sophisticated enough to consider probate matters and the need

to protect his residence through a homestead, that the Schedule was false.

       2. The Debtor

      The Debtor argues that his discharge should not be denied.  He states:

> No where in the agreed facts of the case, nor in any testimony given by the
> debtor or Carpenter does the record indicate that the debtor failed to produce
> any records which were requested, nor did he destroy any records which
> were requested.  Further, while the debtor produced what turned out to be
> an erroneous Schedule of Beneficiaries, he himself did nothing to obfuscate
> or prevent the trustee from obtaining the actual one.  In fact, even though the
> debtor stated that he could not find the original schedule, there is no
> testimony from anyone, nor can it be argued, that he had the original in his
> custody and control and willfully refused to produce it or that he hid it from
> the trustee. Finally, Stella himself did not draft the erroneous Schedule, but
> went back to the attorney who drafted the original documents, upon whom
> he had relied on in the past . . . and sought assistance in producing for the
> trustee a schedule which he thought reflected the actual one drafted in 2001.
> . . . Carpenter substantiated the testimony of the debtor. . . . The debtor also
> testified that he never had any intent to deceive, hide or otherwise frustrate
> any of the bankruptcy proceedings . . . .

The Debtor adds that he was engaged in the business of kitchen remodeling and was not

schooled in the law.  He argues that he relied on Attorney Carpenter for the establishment

and maintenance of his records.  He also states that he believed it was appropriate for him

to file the Schedule prepared by Attorney Carpenter and disputes that he acted with any

fraudulent intent.

**IV. DISCUSSION**

    A. <u>The Partial Objection to Debtor's Claim of Exemption</u>

        1. Applicable Law

Section 522(p)(1) of the Bankruptcy Code in relevant part provides:

> . . . a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215–day period preceding the date of the filing of the petition that exceeds in the aggregate [$125,000] ... in value in—
>
> (A) real or personal property that the debtor or a dependent of the debtor uses as a residence[.]

11 U.S.C. § 522(p)(1)(A).  According to the United States Bankruptcy Appellate Panel for the First Circuit in <u>Aroesty v. Bankowski (In re Aroesty</u>), 385 B.R. 1 (B.A.P. 1st Cir. 2008), "a homestead exemption permitted under state law is subject to the limitation under § 522(p)(1) when three elements exist: (i) an interest in property (ii) is acquired by the debtor (iii) within 1,215 days of the petition filing date." <u>Id.</u>  at 4. The Chapter 7 Trustee, as the objecting party, has the burden of proving that the debtor is not entitled to the claimed exemption. Fed. R. Bankr. P. 4003(c).

At the outset, it is important to note that the Trust at issue in this case was not a nominee trust.  In <u>In re Khan,</u> 375 B.R. 5 (B.A.P. 1st Cir. 2007), the bankruptcy appellate panel observed:

18

Under Massachusetts law, "[a] nominee trust is an entity created for the purpose of holding legal title to property with the trustees having only perfunctory duties; upon termination of the trust, the beneficiaries accede to title as 'tenants in common in proportion to their beneficial interests.' " Johnston v. Holiday Inns, Inc., 595 F.2d 890, 893 (1st Cir.1979) (quoting Robert L. Birnhaum & James F. Monahan, *The Nominee Trust in Massachusetts Real Estate Practice*, 60 Mass. L.Q. 364, 365 (Winter 1976)). The key aspect of a nominee trust is the limitation on the powers of the trustees. "Unlike a 'true trust', the trustees of a nominee trust have no power, as such, to act in respect of the trust property, but may only act at the direction of (in effect, as agents for) the beneficiaries." Birnhaum & Monahan, *supra*, at 365. Therefore, in a nominee trust, the legal title of the trustee and the equitable title of the beneficiary merge when the same person hold both titles. In re Szwyd, 346 B.R. 290, 293 (Bankr. D. Mass. 2006), *aff'd*, 370 B.R. 882 (1st Cir. BAP 2007).

In Aroesty, the Debtor transferred property to her parents as trustees of a nominee trust of which she was the sole beneficiary. Within 1,215 days of the commencement of her bankruptcy case, "three transactions occurred: the Debtor recorded a declaration of homestead as the beneficiary of the Trust, the Trust conveyed the Property to the Debtor, and the Debtor recorded a second declaration of homestead as the title owner of the Property. The deed making this conveyance was recorded." 385 B.R. at 3. The bankruptcy appellate panel in Aroesty examined "the question of whether the Debtor acquired an interest within 1,215 days of filing her petition, thereby triggering the indexed cap imposed by section 522(p)." Id. at 2-3. It rejected the debtor's argument "that an individual who owns a beneficial interest in the subject property beyond the 1,215–day period and later becomes the title owner, does not acquire an "interest" by recording a declaration of homestead during the requisite period . . .[and] . . . is that by recording the declaration, she merely classified her interest in the Property as a homestead." Id. at 6. The panel explained

19

that "this argument fails to account for the legal title the Trust conveyed," adding that "the

Trustee correctly points out that the issue is not whether the recording of the declaration

created an "interest," but whether the legal title is an "interest" under § 522(p)(1)." Id. at

6-7.  The panel concluded:

> "Although the word 'interest' is not defined in the Bankruptcy Code, it has
> been interpreted in the context of § 522(p) to mean 'some legal or equitable
> interest that  be quantified by a monetary figure,' . . . or simply as 'equity in
> the homestead.'" [In re] Khan, 375 B.R.[5] at 9 [(B.A.P. 1st Cir. 2007)]
> (citations omitted). Prior to the December 19, 2006 conveyance, the Debtor
> held a beneficial interest in the Property. As a result of the conveyance, the
> Debtor obtained title interest in Property. Since the net equity in the Property
> is $406,512, the Debtor received title interest in property with a value of
> $406,512. This title interest has a quantifiable monetary value, and thus, it is
> an "interest" under § 522(p)(1).

The Panel further observed:

> Although not disputed, the Panel notes that the other two elements required
> under § 522(p)(1) are present in this case, namely that the Debtor "acquired"
> the interest in property within the meaning of § 522(p)(1) and within the
> requisite time. The Debtor "acquired" the title interest by accepting and
> recording the deed, and then recording the second declaration of homestead.
> See In re Leung, 356 B.R. 317, 322 (Bankr.D.Mass.2006) (finding that the
> debtor "acquired" an interest when he "accepted delivery of the deed and
> then made the affirmative step to declare a homestead"); see also In re
> Rasmussen, 349 B.R. 747, 757 (Bankr. M.D. Fla. 2006). Additionally, the Trust
> conveyed the title interest on December 19, 2006, and the Debtor filed her
> petition on December 27, 2006. As such, the Debtor acquired the interest
> within 1,215 days of her petition date.

Id. at 7.

2. Analysis

This Court finds the decision in Aroesty is dispositive of the issue of whether the

Debtor acquired "any amount of interest" in the Property.  Regardless of whether or not

20

creditors or a Chapter 7 Trustee could obtain a declaratory judgment that the Trust was a

sham or that the Trust *res* is property of the Debtor's bankruptcy estate had he not

conveyed the Property to himself, *see, e.g.*, <u>Braunstein v. Beatrice (In re Beatrice)</u>, 277 B.R.

439 (Bankr. D. Mass. 2002), *aff'd*, 296 B.R. 576 (B.A.P. 1st Cir. 2003), the terms of the Trust

were in effect prior to the July 2, 2009 conveyance from the Debtor, as Trustee of the Trust,

to himself.  Until that time, the Debtor, as Trustee, held only bare legal title and served as

a fiduciary for his sons, the Trust beneficiaries.  To the extent that the deed recites that the

Debtor was sole Trustee and beneficiary, there was no evidence that the Debtor formally

amended the Schedule of Beneficiaries before July 2, 2009.  Moreover, in the instant case,

unlike <u>Aroesty</u> and <u>In re Szwyd</u>, 346 B.R. 290 (Bankr. D. Mass. 2006) (where debtor was sole

trustee and beneficiary of trust, doctrine of merger permitted him to claim a homestead),

the Debtor was never formally a beneficiary of the Trust until after July 2, 2009,[2] as

Attorney Carpenter testified that the reference to the Debtor in the deed as a beneficiary

of the Trust was a "typographical error." The Debtor, as Trustee, was not the equitable

owner of the Property, despite his mistaken belief to the contrary.  Accordingly, cases such

as <u>Redmond v. Kester (In re Kester)</u>, 339 B.R. 749 (B.A.P 10th Cir. 2006), *aff'd*, 493 F.3d 1208

(10th Cir. 2007), where the court permitted debtors who were beneficiaries of a self-settled

---

[2] Although the deed from the Debtor as Trustee of the Trust to himself reflected
that he was "sole Trustee and beneficiary" and although he provided the Chapter 7
Trustee with Schedule of Beneficiaries identifying himself as the sole 100% beneficiary,
there was no evidence that the Debtor, as Trustee, took any steps to remove his sons
from the Schedule of Beneficiaries they executed and which was notarized on
September 5, 2001 prior to July 2, 2009.

revocable trust to claim a homestead under Kansas law), are distinguishable.

The Court is mindful that the Supreme Judicial Court has adopted a liberal construction of the Massachusetts Homestead Statute. *See* Shamban v. Masidlover, 429 Mass. 50, 53-54 (1999); Dwyer v. Cempellin, 424 Mass. 26, 30 n.7 (1996). Nevertheless, just as 11 U.S.C. § 522(c) preempts Massachusetts law for preexisting liens for debts contracted prior to the recordation of the homestead, *see* Patriot Portfolio LLC v. Weinstein (In re Weinstein), 164 F.3d 677 (1st Cir. 1999), *cert. denied,* 527 U.S. 1036 (1999), 11 U.S.C. § 522(p) restricts the amount of a claim of exemption in a valid homestead in circumstances such as here, where a debtor acquires an interest in property within 1,215 days of the commencement of a bankruptcy case. Stated another way, this Court finds that the cap imposed by section 522(p) does not conflict with the policy of liberally construing homestead entitlement so as to permit debtors to conflate trusts, such as the one in the instant case, offensively to take advantage of an available exemption, particularly where the trust was established for a legitimate purpose.[3]

While the Court has been unable to find any cases precisely on point, in In re Hecker, 414 B.R. 499 (Bankr. D. Minn. 2009), the court refused to permit a debtor to employ so-called reverse veil piercing to obtain homestead protection for property owned by a limited liability company in which the debtor had an interest. Noting that reverse veil

---

[3] In view of the amendments to Mass. Gen. Laws ch. 188, § 1 et seq., the issue is unlikely to arise with frequency in the future as an "owner" can claim a homestead if he or she is the holder of a beneficial interest in a trust. Notably, even if the amended statute, whose effective date was March 16, 2010, were to apply to the Debtor's case, the Debtor did not hold a beneficial interest in the Trust when he filed his bankruptcy case.

piercing to exempt assets held by a corporation was unique to Minnesota, 414 B.R. at 504,

the court explained why it would not permit application of the doctrine in the case before

it.  The court stated:

> The facts of Hecker's case do not support the equitable remedy
> of veil piercing. Not only has he failed demonstrate a sufficient
> closeness of identity and a lack of prejudice to shareholders
> and creditors, but just as importantly, he has not demonstrated
> that it would be "unfair and unjust not to pierce the corporate
> veil." <u>Gearman</u>, 413 N.W.2d at 196–97. Hecker is an
> experienced businessman who has owned and operated
> dozens of auto dealerships, car rental franchises and other
> businesses. The <u>Gearman</u> case also involved an established,
> experienced businessman who, perhaps unlike the family
> farmers in <u>Hedge</u> and <u>Euerle Farms</u>, had created and acted
> through his corporate entity with a sophisticated
> understanding of its benefits:
>
>> In this case we have two established,
>> experienced business parties involved in a
>> commercial transaction. Gearman has acted
>> through his corporation for over twenty years,
>> held various properties through it, acquired title
>> to the Hotel in 1980 and executed two mortgages
>> through it, and enjoyed the benefits thereof. It is
>> therefore neither unfair nor unjust to leave
>> Gearman in a position where he must repay
>> money he borrowed in order to carry on
>> business activities.

<u>Gearman</u> at 197. Hecker acquired the Crosslake properties through a limited
liability company as part of an intentional strategy to keep them out of his
wife's hands. He enjoyed the benefits of the limited liability protection for
many years. He owned many properties through his limited liability
companies and surely would have had the means to purchase a homestead
property in his own name.

In both <u>Hedge</u> and <u>Euerle Farms</u>, the parties seeking the homestead
exemption through reverse piercing would have been entitled to the

exemption prior to incorporating, and the question before the court was
whether the debtors lost their homestead exemptions by incorporating. The
property in this case was not Hecker's homestead prior to formation of the
limited liability company. It was not classified as a homestead property for
real estate tax purposes. It was only on the eve of bankruptcy that he decided
to move into the home and claim it as his homestead. Unlike the situations
in <u>Hedge</u> and <u>Euerle Farms</u>, this property is not a farm and is not essential
to Hecker's business, but rather it is a luxury lakefront property. There are
important policy considerations supporting the homestead exemption, and
Minnesota has "'long recognized the importance, notwithstanding the just
demands of creditors, for a debtor's home to be a 'sanctuary.'" <u>Hedge</u>, 375
N.W.2d at 480 (quoting <u>Denzer v. Prendergast</u>, 267 Minn. 212, 126 N.W.2d
440, 443 (1964)). However, Hecker has the burden under Minnesota law to
demonstrate that it would be unfair or unjust not to pierce the corporate veil,
and he has not done so. <u>Gearman</u>, 413 N.W.2d at 196–97.

<u>In re Hecker</u>, 414 .R. at 504.   While this Court recognizes that the Debtor could have

obtained homestead protection prior to the conveyance of the Property to the Trust in 2001,

the Court finds that the Debtor's use of the Trust vehicle was part of a legitimate estate

plan.   When the Debtor's financial affairs deteriorated, he elected to abandon the Trust

vehicle to claim a Massachusetts homestead in the Property standing in his own name.   The

Court finds that the Debtor's argument for something akin to reverse veil piercing is

inconsistent with the equitable remedy used by Chapter 7 trustees and others to benefit

creditors to obtain property held in revocable trusts.

B. <u>The Chapter 7 Trustee's Complaint under 11 U.S.C. § 727(a)(3)</u>

1. Applicable Law

The Chapter 7 Trustee seeks the denial of the Debtor's discharge pursuant to 11

U.S.C. § 727(a)(3) on the ground that the Debtor provided him with a false Schedule of

Beneficiaries in 2010.   The Chapter 7 Trustee alleged that the falsified Schedule of

Beneficiaries constituted recorded information from which the Debtor's financial condition or business transactions might be ascertained and the Debtor's act in delivering the false Schedule of Beneficiaries was unjustified.

Section 727(a)(3) provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor has concealed, destroyed, mutilated, *falsified*, or failed to keep or preserve any *recorded information*, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]" 11 U.S.C. § 727(a)(3)(emphasis supplied).  As the court observed in In re Bailey, 375 B.R. 410, 415 (Bankr. S.D. Ohio 2007), "[a]s an exception to discharge and consistent with the overriding goal of providing a "fresh start" to honest bankruptcy debtors, the statute is to be liberally construed in favor of the Debtor." Id. at 415 (citing Haynes v. Carter (In re Carter), 274 B.R. 481, 484 (Bankr.S.D.Ohio 2002) (citations omitted)).  The court, however, added:  "a discharge is a privilege, and not a right, and should only benefit an honest debtor." In re Bailey, 375 B.R. at 415 (citing In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996) (citations omitted)).

The purpose of section 727(a)(3) "is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge. The statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." Meridian Bank v. Alten, 958 F.2d 1226, 1230 (3rd Cir.

1992).

Litigation involving 11 U.S.C. § 727(a)(3) involves a shift in the burden of proof.

According to the court in <u>In re Burrik</u>, 459 B.R. 881 (Bankr. W.D. Pa. 2011),

> A creditor who objects to the entry of a debtor's discharge under § 727(a)(3) has the initial burden of proving "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." Id. at 1232. Once a "creditor make[s] an initial showing that the debtor's records are inadequate . . . the burden is [then] on the debtor to prove justification [for said inadequacies]."

459 B.R. at 890 (citing <u>Meridian Bank v. Alten</u>, 958 F.3d at 1232).  The court in <u>Burrik</u>,

further observed that "[t]he respective burdens of proof placed upon an objecting creditor

and the debtor under § 727(a)(3) are that of persuasion and said burdens must be met by

a preponderance of the evidence." 459 B.R. at 890 (citing *inter alia* <u>In re Ishkhanian</u>, 210 B.R.

944, 949 (Bankr. E.D. Pa. 1997) (relying on <u>Grogan v. Garner</u>, 498 U.S. 279, 285–91, 111 S.Ct.

654, 658–61, 112 L.Ed.2d 755 (1991)).

Many courts have examined the meaning of recorded information.  The court in

<u>Bailey</u> observed that a plaintiff "is not entitled to perfect, or even necessarily complete,

records," adding that "[i]nstead, the Debtor must provide the Plaintiff 'with enough

information to ascertain the debtor's financial condition and track his financial dealings

with substantial completeness and accuracy for a reasonable period past to present.'" 375

B.R. at 415 (citing, *inter alia,* <u>Turoczy Bonding Co. v. Strbac (In re Strbac)</u>, 235 B.R. 880, 882

(B.A.P. 6th Cir. 1999)).  The Court in <u>Burrik</u> expressed the following views:

First, "said records may be neither (a) 'chaotic or incomplete,' (b) in such a

> condition that a creditor is 'required to speculate as to the financial history
> or condition of the debtor,' nor (c) in such a condition that a 'creditor [is
> compelled] to organize and reconstruct the debtor's business affairs.'" In re
> Buzzelli, 246 B.R. 75, 96 (Bankr. W.D. Pa. 2000) (internal citations omitted).
> Second, "[o]ral testimony is not a valid substitute or supplement for concrete
> written records," In re Juzwiak, 89 F.3d 424, 429–30 (7th Cir. 1996), which
> means that records are inadequate if gaps therein exist that can only be filled
> by the oral testimony of a debtor, see Buzzelli, 246 B.R. at 97. Third, a debtor's
> records must be such that " '[c]reditors . . . [need] not be forced to undertake
> an independent investigation of a debtor's affairs.'" Juzwiak, 89 F.3d at 429;
> Buzzelli, 246 B.R. at 96–97 (quoting Juzwiak). Fourth, "[t]he more complex
> the debtor's financial situation, the more numerous and detailed the debtor's
> financial records are supposed to be," In re Pulos, 168 B.R. 682, 692 (Bankr.
> D. Minn. 1994); therefore, a debtor who runs "a business enterprise engaged
> in a steady stream of large scale transactions involving substantial sums of
> money," in contrast to a typical consumer debtor, must maintain detailed
> financial records, Juzwiak, 89 F.3d at 428.

Burrik, 459 B.R. at 890.  See also Canha v. Gubellini (In re Gubellini), No. 09-016, 2009 B.R.

8466789 (B.A.P. 1st Cir.  2009).

A plaintiff does not need to prove fraudulent intent to demonstrate a section

727(a)(3) violation. Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 70 (1st Cir. 2004);

Juzwiak, 89 F.3d at 430; see also Meridian Bank, 958 F.2d at 1234 ("the court need not find

that the debtor intended to conceal his financial condition" in order for a creditor to prevail

under § 727(a)(3)).

A debtor can establish justification for the inadequacies of his recorded information

based on all the circumstances of the case. Meridian Bank, 958 F.2d at 1231.  Lassman v.

Hegarty (In re Hegarty), 400 B.R. 332, 342-43 (Bankr. D. Mass. 2008). In U.S.Trustee v.

Sohmer (In re Sohmer), 434 B.R. 234 (Bankr. D. Mass. 2010), this Court identified the

following relevant factors relevant to the parties' respective burdens and the establishment

27

of the defense of justification:

> 1. Whether the debtor was engaged in business, and if so, the complexity and volume of the business;

> 2. The amount of the debtor's obligations;

> 3. Whether the debtor's failure to keep or preserve books and records was due to the debtor's fault;

> 4. The debtor's education, business experience and sophistication;

> 5. The customary business practices for record keeping in the debtor's type of business;

> 6. The degree of accuracy disclosed by the debtor's existing books and records;

> 7. The extent of any egregious conduct on the debtor's part; and

> 8. The debtor's courtroom demeanor.

434 B.R. at 257 (citing In re Kowalski, 316 B.R. 596, 601–02 (Bankr. E.D.N.Y. 2004), and

Krohn v. Frommann (In re Frommann), 153 B.R. 113, 117 (Bankr.E.D.N.Y.1993)).

> 2. Analysis

The Court finds that the Trustee failed to sustain his burden of proving that the

Debtor provided him with a falsified Schedule of Beneficiaries. The Debtor first considered

filing a bankruptcy petition in June of 2009 when his financial circumstances had

deteriorated. His business of designing and installing kitchens was tied to the real estate

market, and the deterioration of the housing market and a dispute with the landlord

compelled him to consult with Attorney Carpenter. Attorney Carpenter informed the

Debtor that his house could be in jeopardy and to transfer the Property from the Trust to

himself the purpose of recording a homestead under Mass. Gen. Laws ch. 188, § 1.

Between June of 2009, when he consulted Attorney Carpenter and February of 2010 when the Debtor filed his Chapter 7 petition, the Debtor acquired a fee simple interest in the Property. Additionally, he obtained a mortgage from Hingham Institution for Savings and satisfied the outstanding obligation to Rockland Trust Company. At the commencement of his case, the Property was encumbered by a mortgage to Hingham Institution for Savings in the sum of approximately $98,000 and the equity was protected by a Massachusetts homestead.

The Debtor initially consulted Attorney Carpenter in 2001 about protecting the Property for the benefit of his sons. Attorney Carpenter drafted the Trust document and prepared the Schedule of Beneficiaries which was executed by the Debtor's sons and notarized. The Debtor always thought of the Property as his own and paid expenses for the Property from his personal bank accounts, although he must have been aware that the Property was held in Trust for the benefit of his sons because tax bills were addressed to him as "Stella William A TT Stella Family Realty Trust." Additionally, the parties agreed that in 2006 he applied to Rockland Trust Company for a mortgage and the mortgage that the he obtained was in his name as Trustee of the Trust. Nevertheless, there was no evidence that the Debtor had a keen understanding of, and ability to discern the relationship and nuances between trust and bankruptcy law, particularly where, at all times, he believed that he was the actual owner of the Property.

Article VII of the Trust, together with its other terms, provided the Debtor with the

power to change beneficiaries ("The beneficial interest of the Beneficiaries are as may now or hereafter be set forth on said SCHEDULE OF BENEFICIARIES which shall from time to time be amended to reflect any change in the identity of the Beneficiaries or in their respective interest hereunder."). When the terms of the Trust are considered in conjunction with the deed prepared by Attorney Carpenter in July of 2009 and the 2010 Schedule of Beneficiaries, it is clear that the Debtor did not submit a false Schedule of Beneficiaries to the Trustee in 2010. The deed from the Debtor, as Trustee, to himself, as a practical matter terminated the Trust.

Although the Debtor did not formally amended the Schedule of Beneficiaries prior to executing the deed on July 2, 2009, Attorney's Carpenters' recollection of the Trust's terms and the Debtor's status as sole beneficiary reinforced the Debtor's belief that he could treat the Property as his own and submit to his counsel a Schedule of Beneficiaries consistent with what was set forth in the deed and his intention to regain full and indivisible ownership of the Property for purposes of obtaining homestead protection pursuant to Mass. Gen. Laws ch. 188, § 1. The Debtor's ability to amend the identity of the beneficiaries together with Attorney Carpenter's imperfect recollection that the Debtor was the sole beneficiary resulted in the production of the 2010 Schedule of Beneficiaries. While newly minted for the Chapter 7 Trustee's benefit, it was not false within the meaning of section 727(a)(3). The Debtor intended to be and had the power to make himself sole beneficiary of the Trust. Weighing the applicable factors identified by this Court in In re Sohmer, 434 B.R. at 257, the Court finds that the Debtor believed that he was the sole

30

beneficiary of the Trust; that he did not know that signing and delivering the 2010 Schedule of Beneficiaries of the Trust to his counsel and the Trustee was inappropriate; and that he justifiably relied on the advice of Attorney Carpenter in signing and delivering the 2010 Schedule of Beneficiaries of the Trust.

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order sustaining the Chapter 7 Trustee's Partial Objection to Debtor's Claim of Homestead Exemption.  The Court shall enter judgment in favor of the Debtor and against the Trustee in the adversary proceeding.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  March 7, 2012

31